GULOTTA, Judge.
This action based on an alleged contract is brought by Directional Advertising Services — a division of Ebsco Industries, Inc. — against defendant, Fairfield, for the sum of $724.54. From the trial court’s judgment granting plaintiff the full sum of $724.54 with interest, 25 percent attorney’s fees and all costs, defendant has prosecuted this appeal.
The facts are that in September, 1968, the defendant was approached by a representative of plaintiff who sought to sell its service. The service to be performed was the placing of advertisements for Fair-field’s company in plastic magazine covers to be used on display racks in specific, and as yet undetermined, beauty shops in the New Orleans area. Fairfield expressed interest in the proposal, designating the Me-tairie and Gentilly areas as the sections where he wished to use the proposed recruiting device. A representative of Directional Advertising helped defendant create a layout for the advertisement he wanted. In September of 1968, Fairfield signed an agreement for these advertisements, the nature of which is the determinative factor in the case and affects the liability of defendant.
Plaintiff contends that the agreement was in fact a valid written contract, while defendant contends that he merely signed an agreement to contract for the advertisement conditioned upon his being advised of the beauty shop locations in the Metairie and Gentilly areas subject to his approval.
On October 1, 1968, plaintiff’s representative picked up the ad layout. Defendant alleges that about six months later, on April 16, 1969, he wrote Directional Advertising stating that since he had heard nothing from them in six months, he was canceling the agreement for failure to comply. We are unable to find this letter in the record. However, in subsequent communications, the parties indicate that such a letter must have been written.
The record reveals that nine months after the original agreement, a letter dated June 11, 1969, was sent to Fairfield by plaintiff informing him the advertising service had been installed in some shops in the Veterans Highway area in January, 1969, and in the Gentilly area in February, 1969. No locations were ever submitted to defendant in order that he could look at them prior to the installation of service. It is noteworthy that this letter of June 11, 1969, contains a direct reference to a letter plaintiff received from defendant concerning the advertising services. Also, Fair-field had at some time communicated his displeasure because the June 11, 1969, letter states:
“It did not occur to me that providing no-cost exposure would present a problem.”
Upon receipt of that letter, Fairfield wrote a response dated June 14, 1969.
*390 Herein, he specifically described the subject of his message:
“Subject: Cancellation dated April 16, 1969.”
and refused the service which had been the subject of plaintiff’s letter because of unnecessary delay.
The facts indicate that some correspondence occurred between plaintiff and defendant prior to the June 11, 1969, letter, making clear that Fairfield was not satisfied with plaintiff’s performance.
The issue for our determination is whether or not a valid contract existed under the circumstances on which defendant could be held liable.
The pertinent paragraphs of this purported agreement are listed under the heading “Agreement and Condition of Sale” and read as follows:
“AGREEMENT AND CONDITION OF SALE”
“EBSCO Industries, Inc. will provide advertising services through its reading service of display rack, magazine subscriptions, advertising display binders and printed advertisement for an initial period of (3) three years to be installed in locations listed on the back of this page.
“EBSCO will provide customer with a copy change at the end of the 12th month and 24th month upon written request only. Changes shall be allowed to advertiser at the advertiser’s expense. Request for change must be in writing with payment in advance.
“Copy of advertisement will be submitted for approval by advertiser before being printed. If approval or changes are not returned within 7 days Directional Advertising Services will be considered to have authorization to print and insert the same.” (Emphasis added.)
On the reverse side of the form is an Advertiser Contract Order Form with blank lines upon which are to be listed the name, address and city of each location to be used. The first paragraph of the agreement contemplates that specific locations were to be listed on the reverse side of the agreement. Since the advertising at specific locations was a primary consideration or cause contemplated by the agreement, it follows that the furnishing of a list of locations would be a suspensive condition and thus a pre-requisite for the existence of a valid contract. The agreement itself refers to the first paragraph as a condition of sale. LSA-R.C.C. art. 2471 reads in part:
“A sale made with a suspensive condition, does not transfer the property to the buyer, until the fulfillment of the condition.”
LSA-R.C.C. art. 2021 also illumines the effect of a suspensive condition:
"Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition; if the obligation takes effect immediately, but is liable to be defeated when the event happens, it is then a res-olutory condition.” (Emphasis added.)
It would seem that in light of LSA-R. C.C. art. 2021, no obligation on Fairfield’s behalf could come into existence until a list of locations was submitted to him on the reverse side of the contract or on an appendix attached thereto. Fairfield testified that no list of locations was ever shown to him, which was uncontradicted.
It is basic contract law that the will of the parties must unite on the same point. See LSA-R.C.C. art. 1798. Faroldi v. Nungesser, 144 So.2d 568 (La.App. 4th Cir. 1962); E. Levy and Company v. Shreveport Plumbing Company, 108 So.2d 810 (La.App.2nd Cir. 1959). The object and purpose of the subject agreement was to promote Fairfield’s business through the *391 proposed advertising method and services to be sold to him by Directional Advertising, Inc. Specific locations for the advertising were an integral part of the service and formed the principal cause for the agreement. Thus, the “reality of the cause” is the essence of the agreement. LSA-R.C.C. art. 1824 says:
“The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no valid consent.”
(Emphasis added.)
The sine que non of the alleged contract between plaintiff and defendant was the locations for the ads. When these locations would become a “reality” and form part of the agreement, thus being subject to scrutiny by Fairfield, then a contract would have its genesis.
It was the determination of the trial judge that a valid contract existed between plaintiff and defendant which created an obligation of monetary indebtedness by defendant. We cannot agree with that finding.
We conclude that since no valid contract ever came into existence, no obligation was henceforth created because the obligation based on a suspensive condition is dependent on the happening of a future event, i. e., the furnishing of the list of the locations to the defendant which never occurred. LSA-R.C.C. art. 2043 states:
“The obligation contracted on a suspen-sive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.
“In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.” (Emphasis added.)
No one from Directional Advertising Services ever contacted Fairfield to show him the list of the locations in which the advertising services were to be installed. Therefore, in absence of the prerequisite event upon which defendant’s obligation was based, the creation of an obligation was never consummated. Clearly, since the list of locations was a suspensive condition by terms of the contract, which condition was never met, then the contract was never valid, ab initio.
The appellant raises the question of the inadmissibility of parole evidence to vary, contradict, or modify the terms of the contract. This testimony was admitted by the trial judge over the objection of appellant. In view of our conclusions herein, there is no necessity to consider this contention.
For the foregoing reasons, the judgment of the trial court is reversed and plaintiff’s suit is dismissed at his cost.
Reversed and rendered.